FILED

OCT 2 6 2012

VERMONT SUPERIOR COURT
CALEDONIA UNIT

STATE OF VERMONT

SUPERIOR COURT
Caledonia Unit

CIVIL DIVISION
Docket # 13-1-10 Cacv

JAMES BOUND,

v.

MICHEL MOLLEUR

## DECISION

This matter came before the Court for a final hearing on the merits on September 24 and 27, 2012. Plaintiff and Defendant own adjacent land parcels in a somewhat remote wooded location in the Town of Hardwick. Haynesville Brook separates their two parcels. This suit concerns whether Defendant holds a right of way across Plaintiff's land at a spot where Defendant has built a flat wooden bridge across the brook and created a short stretch of road on Plaintiff's side of the bridge to connect with Old Highway 15, which is a town road that runs along the brook on Plaintiff's side of the brook. Plaintiff seeks to enjoin Defendant from continuing to maintain and use the bridge and access to the road. Defendant claims that he holds a right of way to have a bridge at that location and a right of way to connect to the town road, as well as a right to cross the brook at a ford a little further downstream that also crosses Plaintiff's land. Both parties seek a declaration of their respective rights on Plaintiff's land.

The Court took a view on September 24, 2012, and took evidence in court on September 27, 2012. Plaintiff is represented by Paul Gillies, Esq. Defendant is represented by Jon Valsangiacomo, Esq.

### Findings of Fact and Conclusions of Law

Plaintiff is an investor in parcels of undeveloped land that are sold at tax sales. He bought his land at a tax sale in 1989 for $385. There is no boundary survey of the property. The Town lists it as consisting of 1.5 acres. He believes that it is 3.7 or 3.8 acres. It lies west of the Haynesville Brook in Hardwick, very near the Walden line. A former state highway, Old Route 15, runs near the west bank of the brook through his land. Vegetation filled in the old unused highway route over the years, though old wood guardrails and remains of a concrete culvert are still visible.

Defendant is a long-time resident of Walden and a lifetime logger. He bought his land in 1996, which consists of 70 acres of mostly wooded put partially open land. He bought it primarily in order to log it, knowing that it had last been logged in the 1950s. It lies to the east of Haynesville Brook, on the opposite side of the brook from both Plaintiff's land and the Old Route 15. The prior owner had had a survey done by licensed surveyor Russell Deming in 1995, and Defendant relied on this survey (Exhibit F). The parcel has no road frontage. The Deming survey referenced two locations for access: a "right of way crossing" (a ford across the brook, hereinafter 'ford site'), and a "bridge and right of way" (hereinafter 'bridge site') a little further upstream.

1

Defendant began logging his land in 1997. He took logs off his property using the ford site, dragging the logs across the brook with a skidder. He also built a temporary bridge at the ford site, which he had in place for only six months.

He subsequently constructed a permanent flat wooden bridge 17-18' wide across the brook at the bridge site, and also upgraded that portion of the grown-over Old Route 15 that leads from current Vermont Route 15 across Plaintiff's land to the bridge to provide driving access to and from the bridge leading to his land.

Plaintiff filed this suit in January of 2010, seeking a declaration of rights with respect to Defendant's use of Plaintiff's land, as well as an injunction prohibiting Defendant from using Plaintiff's lands, and damages for costs of restoring the land to its prior condition and for the value of trees cut and removed. Defendant joins the Plaintiff in seeking a declaration of the parties' respective rights in the Plaintiff's land, but otherwise opposes the relief Plaintiff seeks.

In August of 2010, Plaintiff obtained a site survey from licensed surveyor Carroll Peters (Exhibit 10). It is not a boundary survey but depicts a portion of the Plaintiff's land as well as the ford site, the bridge site, Old Route 15, and a detail of the Defendant's bridge as constructed.

At the hearing, the Court heard testimony from both parties and from surveyor Carroll Peters (for Plaintiff), surveyor Lisa Ginett (for Defendant), and Stephen Slayton (by video, for Defendant). The Court finds that the credible evidence supports the Defendant's position that he holds a right of access at the bridge site to have a bridge to cross the brook and an easement across Plaintiff's land to Old Route 15. A chronology of the supporting evidence follows. Determination of the issues involves mixed questions of law and fact on various points, and because the outcome is best described in a historical narrative, the conclusions of law are addressed within the chronology set forth below.

In 1923, a single owner, Goodrich, owned all of the lands now owned by both parties and more land as well. At that time, Old Route 15 was a town road known as the Hardwick-South Walden Road. A drawing in the records of the Agency of Transportation (AOT) shows a bridge across the Haynesville Brook at a location approximating the bridge site, as it is at the spot where the brook is closest to the town road, as also shown on Exhibits 10 and F. The 1923 AOT drawing also shows the bridge connecting to the Hardwick-South Walden town road. This would have been a bridge and road located wholly within private lands owned by Goodrich, subject to the town right-of-way for the road.

On May 12, 1924, Goodrich conveyed to Anair a parcel of 70 acres which is now Defendant's land. Goodrich retained ownership of some other lands including the portion now owned by Plaintiff. In the conveyance to Anair, Goodrich conveyed, in a paragraph separate from the description of the land parcel as follows: "Meaning hereby to convey the bridge to said conveyed land from the Hardwick-South Walden Road." Exhibit A. No other access was specified, and the land was otherwise landlocked.

In 1927, there was widespread flooding in Vermont, and many bridges and roads were destroyed. The extent of flooding at this location, near the Hardwick-Walden town line, is unknown, but it is a reasonable inference that the bridge referred to in the Goodrich-Anair deed was washed out. Whereas the 1923 AOT drawing showed a bridge and one was referenced in the 1924 deed, an AOT drawing from 1928 shows no bridge, and a 1930 AOT drawing also shows no bridge at the bridge site. The 1928 drawing does, however, explicitly depict granite fill placed along the banks of Haynesville Brook including at the bridge site and to the north and south of it. As our recent experience with Tropical Storm Irene has demonstrated, it is common to repair washed-out banks of flooded waterways by adding fill. Granite fill can still be seen at the bridge site today, most likely from repairs after the 1927 flood.

2

In 1931, the State took over the Hardwick-South Walden town road, and it became known as State Highway 15.

In 1931, the State relocated the pertinent section of State Highway 15 further to the west, and relinquished its easement on Old Route 15 to the Town of Hardwick.

Aerial photos of Defendant's land from 1942 show Old Route 15 and a clear space at the bridge site consistent with an access road to the bridge.

In the 1950's, Stephen Slayton's parents owned the lands formerly of Anair, and now owned by Defendant. They built a bridge at the bridge site wide enough for a farm truck, and used the bridge in connection with their use of the land to cut softwood and for pasture. They planted Norway spruce trees along the road leading down the hill from the interior of the land toward the bridge. (Defendant cut down these trees in recent years; the stumps are visible along the open roadway leading to the bridge Defendant constructed.) By the late 1950's or early 1960's, the Slaytons' bridge was gone.

In 1958, the State acquired the parcel of land between Old Route 15 and the relocated new State Highway 15. Also in 1958, the Town quitclaimed to the State any fee ownership interest in the westerly half of the road. The Town has never discontinued Old Route 15 as a Town road. Plaintiff claims ownership to the centerline of Old Route 15. It is unclear whether Plaintiff or the Town owns the fee of the easterly half of Old Route 15, but it is unnecessary for this Court to decide, as that is not an issue between the parties to this case; it is a matter between Plaintiff and the Town.

Aerial photos from 1962 also show Old Route 15 and an opening in the land near the bridge site that is likely the main point used for access to Defendant's land.

When Plaintiff bought his land in 1989 at the tax sale, the eastern boundary, abutting Defendant's land, was (and is) the centerline of Haynesville Brook.[1] Plaintiff's land was (and is) encumbered by the easement held by the Town of Hardwick for Old Route 15. Thus, the public has the right to use Old Route 15, and Defendant has the right to use it as a member of the public. In addition, when Plaintiff acquired his parcel, it was (and is) encumbered by the right of Defendant's predecessor in title, as owner of the former Anair land, to the same rights Anair acquired from Goodrich.

This calls for a legal interpretation of the bridge rights conveyed in the 1924 Goodrich-Anair deed: "Meaning hereby to convey the bridge to said conveyed land from the Hardwick-South Walden Road." Plaintiff argues that only the bridge was conveyed as an item of personal property, and no easements were conveyed in this paragraph. Surveyor Lisa Ginett is of the opinion that the paragraph inartfully conveyed not only the bridge itself but an easement to cross the brook at the location of the bridge. Surveyor Peters also acknowledged that the conveyance of the bridge supports an inference of a conveyance of a right of way across it.

Lisa Ginett also opined that the easement conveyed continued from the bridge to the town road that then existed and later became a state road and is again a town road, Old Route 15. The Court accepts her professional opinion on this point, based on her experience researching and making sense of conveyance instruments for purposes of surveying. It is also the only interpretation that makes sense. If the bridge were only conveyed as personal property, with no accompanying easement, it would truly have been a 'bridge to nowhere.' The practical meaning of the bridge paragraph in the deed is the conveyance of the bridge together with an easement to maintain a bridge at that location to cross the brook as well as

---

[1] Surveyor Lisa Ginett testified that a search of land records suggested that the common boundary was a bank of the brook. However, both the Deming survey and the Peters survey use the centerline of the brook as the common boundary. Plaintiff claims that as the boundary and Defendant's own evidence, in the form of the recorded Deming survey, is in accord. The Court finds that Plaintiff has proved the centerline of the brook as the common boundary.

3

an easement to connect to Old Route 15 to provide access to the land parcel conveyed, which was otherwise landlocked, except for the right to ford the brook with teams as described below.

Thus, when Defendant purchased in 1996, he acquired the same rights of access held by his predecessor: the right to cross Plaintiff's half of the brook at the bridge site by bridge and continue straight across Plaintiff's land the necessary distance (depicted on the Peters site survey) to Old Route 15, including the right to construct and maintain a bridge to do so. In addition, Defendant acquired the right to ford the brook "with teams."

Plaintiff acknowledges that Defendant has a right created by deed to a crossing of the brook with teams at a ford[2] but argued that the location was further to the south and not on Plaintiff's property. Defendant's evidence on the location is more credible than Plaintiff's, and the Court finds that Defendant holds a right of crossing and access to Old Route 15 at the ford site as set forth in the 1904 deed.

Thus, Plaintiff's parcel is subject to the following rights of Defendant:

1. The right to use Old Route 15 as a town highway;
2. The right to cross Haynesville Brook at the ford site "with teams"[3] and continue on an easement leading to Old Route 15 (as shown on the Peters site survey); and
3. The right to build, maintain, and use a bridge at the bridge site and continue on an easement leading to Old Route 15 (as shown on the Deming survey).

In addition, the common boundary between Plaintiff and Defendant is the centerline of Haynesville Brook.

Based on this declaration of rights, Plaintiff is not entitled to the other forms of relief requested.

## ORDER

For the foregoing reasons, Defendant is entitled to Judgment. Defendant's counsel shall prepare a form of Judgment consisting of a Declaration of Rights suitable for recording in the land records.

Dated at St. Johnsbury this 26th day of October, 2012.

Mary Miles Teachout
Mary Miles Teachout
Superior Court Judge

---

[2] A 1904 conveyance in Defendant's chain of title, prior to ownership of Goodrich, recorded at Book 22, Page 126, reserved from the conveyance "the right to cross, with teams, the southeast corner of said land from the highway ["leading from St. Waldon to Hardwick"] to the opposite side of the brook and back at the place formerly used for that purpose." Exhibit 11. Lisa Ginette expressed the opinion that the ford crossing was extinguished when Goodrich acquired and owned property on both sides of the brook. Plaintiff bears the burden of proof on his claims, and did not prove extinguishment of the ford crossing right.

[3] Neither party presented argument on the scope of this right. Defendant referenced skidders as equivalent to teams, and appears to acknowledge the use of teams and skidders, presumably for agricultural and forestry purposes, as representing the scope of the right.

4